UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SACHIN LNU,[1] | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | |
| | * | |
| ANTONE MONIZ, Superintendent, Plymouth | * | |
| County Correctional Facility; DAVID | * | |
| WESLING, Acting Field Office Director, | * | Civil Action No. 1:26-cv-11670-IT |
| Boston Field Office, U.S. Immigration & | * | |
| Customs Enforcement; TODD M. LYONS, | * | |
| Acting Director, U.S. Immigration and | * | |
| Customs Enforcement; TODD BLANCHE, | * | |
| Acting U.S. Attorney General; and | * | |
| MARKWAYNE MULLIN, Secretary of | * | |
| Homeland Security | * | |
| | * | |
| Respondents. | * | |
| | * | |

MEMORANDUM & ORDER

June 10, 2026

TALWANI, D.J.

Pending before the court is Petitioner's Verified Emergency Petition for Writ of Habeas

Corpus and Incorporated Memorandum of Law [Doc. No. 1] ("Petition").

**I.    Background**

*A.  Petitioner's Entry into the United States in July 2024*

Petitioner, a citizen of India, entered the United States on July 6, 2024, by crossing the

United States border "near Mooers, New York, on foot." Pet. ¶ 14 [Doc. No. 1]. Petitioner

---

[1] Petitioner states that he "does not have a last name" and that "U.S. immigration authorities have inserted the placeholder 'LNU' which stands for 'Last Name Unknown' in the documents they have generated respecting Petitioner's matter." Pet. ¶ 1 n.1 [Doc. No. 1].

entered without having been admitted or paroled and was apprehended by U.S. Border Patrol personnel. Id. That day, a U.S. Department of Homeland Security ("DHS") agent issued Petitioner an Order of Release on Recognizance and a Notice to Appear instructing Petitioner to appear before an Immigration Judge in New York City, New York, on October 15, 2024. See Pet., Ex. 3, at ECF 2, 4 [Doc. No. 1-3] (the "Notice to Appear").

The Notice to Appear charged Petitioner as removable under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(6)(A)(i), as "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." Id. at ECF 2. The DHS agent who completed the Notice to Appear also designated Petitioner as "an alien present in the United States who has not been admitted or paroled[,]" rather than as "an arriving alien." Id.

After DHS released him, Petitioner "resided in the United States for approximately a year and a half" and filed a Form I-589, Application for Asylum and for Withholding of Removal, and Protection under the Convention Against Torture "based on his . . . fear of persecution in India." Pet. ¶¶ 17–18 [Doc. No. 1].

### B. Petitioner's Arrest and Detention

Petitioner is now detained in immigration custody at the Plymouth County Correctional Facility in Plymouth, Massachusetts. Id. ¶¶ 1, 21.

The government reports that Petitioner was arrested by local law enforcement in Massachusetts for "Breaking and Entering for a Felony, Vandalism, and Kidnapping" in February 2026. Opp'n 2 [Doc. No. 8]; see id., Ex. 2, at 1–2 [Doc. No. 8-2] ("Arrest Report") (reporting Petitioner's February 5, 2026 arrest by Middleton Police for "B&E Daytime for

2

Felony, Person in Fear[,]" "Vandaliz[ing] Property[,]" and "Kidnapping").[2] The government

reports further that ICE "administratively arrested Petitioner" on or about February 6, 2026.

Opp'n 2–3 [Doc. No. 8]; see also Warrant for Arrest of Alien [Doc. No. 8-5].

### C. *Denial of Asylum and Dismissal of State Charges*

On April 14, 2026, an Immigration Judge denied Petitioner's Form I-589 and ordered

him removed to India. Opp'n, Ex. 4, at 1, 3 [Doc. No. 8-4]. Petitioner reserved his right to

appeal, with any appeal due May 14, 2026. Id. at 4.

On April 16, 2026, the Massachusetts charges pending against Petitioner at the time of

his administrative arrest by ICE were dismissed for "failure to prosecute." Reply Ex. 1, at ECF

2–3 [Doc. No. 9-1].

### II.    Procedural History

On April 9, 2026, five days prior to the denial of his Form I-589 and seven days prior to

the dismissal of the state charges, Petitioner filed his Petition [Doc. No. 1] in this court, seeking,

inter alia, immediate release and an order preventing the government from

> re-detain[ing] Petitioner without a pre-deprivation hearing at which the government
> bears the burden to demonstrate, by clear and convincing evidence, that the
> petitioner is a danger to the community or a flight risk and at which the immigration
> judge must consider non-bond alternatives to detention or, if setting a bond, the
> petitioner's ability to pay.

---

[2] In the Petition [Doc. No. 1], Petitioner asserts that he was arrested on January 31, 2026, when he "went to the [I]mmigration [C]ourt for his hearing[,]" and has been detained since that time. Id. ¶¶ 1, 19, 21; see Mot. for Order on Fully Briefed Pet., or in the Alternative, for [a] Status Conf. 2 [Doc. No. 15] (again asserting that Petitioner was "abruptly re-detained by ICE" on January 31, 2026). But where Petitioner has offered no evidentiary support as to a January 31, 2026 arrest; does not dispute the government's assertion that he was the individual arrested by local police on February 5, 2026 in Middleton, Massachusetts; and, in his Reply [Doc. No. 9], has submitted a criminal docket from the Massachusetts District Court that lists "02/05/2026" as the alleged "[o]ffense [d]ate[,]" the "[d]ate [c]omplaint [i]ssued[,]" and the "[p]recomplaint [a]rrest [d]ate" in Petitioner's state case, see Reply Ex. 1, at ECF 1 [Doc. No. 9-1], the court finds Petitioner's allegations that he was arrested on January 31, 2026, and has been detained since that date, to be implausible.

Id. at 13 ¶ 5.

As grounds, Petitioner asserted that (1) he is subject to detention, if at all, under 8 U.S.C. § 1226(a), rather than under 8 U.SC. § 1225; (2) in the absence of "any pre-deprivation process[,]" Petitioner's detention violates his due process rights under the Fifth Amendment of the U.S. Constitution; and (3) the government "failed to follow [its] own regulations and procedures in re-detaining Petitioner without an individualized bond determination[,]" thereby violating the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (B). Id. ¶¶ 41–57.

In their Opposition [Doc. No. 8] filed on April 15, 2026, Respondents asserted that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2), but recognized that "the legal issues presented in this Petition are similar to those recently addressed by this Court in Doe v. Moniz[, 800 F. Supp. 3d 203 (D. Mass. 2025)]" and similar cases. Opp'n 3 [Doc. No. 8]. Respondents argued in the alternative that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c), which provides in relevant part:

> The Attorney General shall take into custody any alien who . . . is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person[.]

8 U.S.C. § 1226(c)(1)(E)(ii); see Opp'n 3 [Doc. No. 8]. Respondents averred that Petitioner's state criminal charge for "Breaking and Entering for a Felony[,]" which was still pending when the Opposition [Doc. No. 8] was filed, placed Petitioner within the ambit of 8 U.S.C. § 1226(c)'s mandatory detention provision. Id. at 3–4.

On April 20, 2026, Petitioner filed a Reply [Doc. No. 9], in which he informed the court that his pending state charges, including the charge of "Breaking and Entering for a Felony[,]" were dismissed for "failure to prosecute" on April 16, 2026. Id. at 2, 4. In light of this development, the court ordered the government to "inform the court whether [it] still maintain[s]

that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c) and, if so, provide the legal authority for [its] position." Elec. Order [Doc. No. 10].

The government filed its Response to Court Order (Doc. 10) [Doc. No. 13] on April 28, 2026. As discussed in greater detail infra, the government takes the position that, although all criminal charges against Petitioner have been dismissed, Petitioner remains "subject to mandatory detention pursuant to 8 U.S.C. § 1226(c)." Id. at 1. Petitioner opposes the government's interpretation and application of the statute on several bases. Pet.'s Resp. to Resp'ts' Position on 8 U.S.C. § 1226(c)(1)(E)(ii), at 1–2, 5, 7 [Doc. No. 14].

**III.    Discussion**

   A.  *Whether Petitioner's Detention is Authorized Under 8 U.S.C. § 1225(b)(2)*

Insofar as the government argues that Petitioner is subject to detention under 8 U.S.C. § 1225(b)(2), rather than under 8 U.S.C. § 1226(a), the government acknowledges that "[s]hould the court follow its reasoning in Doe, Escobar [v. Hyde, 25-cv-12620-IT, 2025 WL 2823324 (D. Mass. Oct. 3, 2025)], Da Silva [v. Hyde, 25-cv-12638-IT (D. Mass. Oct. 7, 2025)], Venancio [v. Hyde, 25-cv-12616-IT (D. Mass. Oct. 9, 2025)], and Caguana-Caguana [v. Moniz, 25-cv-13142-IT, 2025 WL 3171043 (D. Mass. Nov. 13, 2025)], it would reach the same conclusion that Petitioner is detained under 8 U.S.C. § 1226, rather than 8 U.S.C. § 1225(b)(2)." Opp'n 3 [Doc. No. 8].

The court finds that the reasoning in Doe remains correct. As applied here, there is nothing in the record before the court indicating that Petitioner should be characterized as an "arriving alien" subject to mandatory detention under 8 U.S.C. § 1225, particularly where the July 2024 Notice to Appear designated Petitioner as "an alien present in the United States[,]" rather than as "an arriving alien." Notice to Appear ECF 2 [Doc. No. 1-3].

5

Accordingly, the court finds that Petitioner is not subject to detention under 8 U.S.C. § 1225(b)(2).

B. *Whether Petitioner's Detention is Authorized Under 8 U.S.C. § 1226(c)*

In the government's view, the dismissal of Petitioner's "Breaking and Entering for a Felony" charge "does not change the analysis" regarding the application 8 U.S.C. § 1226(c)'s mandatory detention provision where the statute "does not state that an alien should be released upon adjudication of the charges" and, "by specifically differentiating between those who are 'charged,' 'arrested,' and 'convicted,' the statute makes clear that being convicted of the charge is not a requirement for detention." Resp. 1–2 [Doc. No. 13]. The government also asserts that it is "unaware of the specific circumstances regarding the dismissal" of Petitioner's charges, such that "[t]he charges may have been dismissed as the Petitioner was not present due to being in [ICE] custody or for other reasons which do not pertain to the evidence in this case." Id. at 2. But the question is not whether a noncitizen detainee must be "convicted" of one of the enumerated crimes in 8 U.S.C. § 1226(c) for the statute's mandatory detention provision to apply, but rather, where mandatory detention is based on an individual being charged with a crime, whether the dismissal of charges against Petitioner—for whatever reason—renders 8 U.S.C. § 1226(c) no longer applicable to him.

Three of the four District of Massachusetts cases to which the government directs the court shed no light on the application of 8 U.S.C. § 1226(c) in circumstances where charges have been dismissed. See Romero Chavez v. Moniz, 25-cv-13984-MJJ, at *1–2 (D. Mass. Jan. 15, 2026) (Dkt. No. 11) (no indication that petitioner's shoplifting charge was dismissed); Marques Da Silva v. Moniz, 25-cv-13520-MJJ, at *1–2 (D. Mass. Dec. 12, 2025) (Dkt. No. 12) (no indication that petitioner's larceny by check charge was dismissed); Zambrano Urena v.

Plymouth Cnty. Correc. Facility, 25-cv-13352-JEK (D. Mass. Dec. 9, 2025) (Dkt. No. 16) (petitioner's charges for shoplifting, unlawful deactivation or removal of a theft detection device, and unlawful possession of a theft detection device remover remained pending). In the one cited case in which a detained noncitizen's criminal charge was dismissed, the court denied habeas relief where the noncitizen "concede[d] that he fits within the detention provisions of [8 U.S.C. § 1226(c)(1)(E)]." Garcia Vasquez v. Moniz, 25-cv-13371-RGS (D. Mass. Dec. 9, 2025) (Dkt. No. 14).

Petitioner argues that the government's understanding of 8 U.S.C. § 1226(c) "rests on four flawed premises[,]" as follows:

> (1) that present-tense statutory language applies permanently to past events, in defiance of settled canons of construction; (2) that [8 U.S.C. § 1226(c)] may be applied retroactively to events predating its January 29, 2025 enactment; (3) that a dismissed charge for "Breaking and Entering for a Felony" is necessarily a "burglary" offense under [8 U.S.C. § 1226(c)'s] own definitional rule; and (4) that Demore v. Kim, 538 U.S. 510 (2003), insulates from constitutional scrutiny mandatory detention that is no longer tethered to a valid statutory predicate.

Pet.'s Resp. 1 [Doc. No. 14].[3]

Assuming, without deciding, that the crime of "Breaking and Entering for a Felony" is within the scope of 8 U.S.C. § 1226(c)'s mandatory detention provision, the court turns to Petitioner's argument that, in light of the dismissal of the state charges against him, mandatory detention violates Petitioner's right to due process under the Fifth Amendment to the United States Constitution.

The Due Process Clause of the Fifth Amendment "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or

---

[3] The court finds Petitioner's argument regarding 8 U.S.C. § 1226(c)'s retroactivity inapplicable here where the arrest at issue occurred after the statute was signed into law on January 29, 2025. See Pub. L. No. 119-1, 139 Stat. 3 (2025).

permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Consistent with that tenet, Petitioner

argues that "some individualized process is constitutionally required here." Pet.'s Resp. 8 [Doc.

No. 14]. In Petitioner's view, "the constitutional-avoidance canon strongly supports limiting

§ 1226(c)(1)(E)(ii) to persons presently charged with or arrested for a qualifying offense[,]" such

that the court should "constru[e] the statute to require a present, valid predicate charge or arrest

and, at a minimum, to require and individualized bond hearing when that predicate has ceased to

exist." Id. at 7–8. In its Response to Court Order (Doc. 10) [Doc. No. 13], which was filed prior

to Petitioner's response, the government does not offer any argument regarding Petitioner's

constitutional right to due process, except to state that Petitioner's "less than three-month

detention" is "not so prolonged to give rise to due process concerns." Id. at 2.

In Mathews v. Eldridge, 424 U.S. 319 (1976), the Supreme Court set forth a three-part

test that courts have used to assess due process challenges to noncitizens' detention under

8 U.S.C. § 1226. See Black v. Decker, 103 F.4th 133, 147–48 (2d Cir. 2024) (applying Mathews

to due process challenge to detention under § 1226(c)); Hernandez-Lara v. Lyons, 10 F.4th 19,

27–28 (1st Cir. 2021) (applying Mathews to detention under § 1226(a)); Alcantara Guerrero v.

Wesling, __ F. Supp. 3d ____, 26-cv-10928-JEK, 2026 WL 931503, at *4–5 (D. Mass. Apr. 6,

2026) (applying Mathews to due process challenge to detention under § 1226(c)); Doe v. Moniz,

800 F. Supp. 3d 203, 216 (D. Mass. 2025) (same). Mathews instructs that

> identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

8

Under the Due Process Clause of the Fifth Amendment, "[n]o person shall . . . be deprived of . . . liberty . . . without due process of law[.]" "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process Clause] protects." Zadvydas, 533 U.S. at 690; Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004) (individual's interest "in being free from physical detention" is "the most elemental of liberty interests"). Where "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protections[,]" Hernandez-Lara, 10 F.4th at 28 (quotation omitted), Petitioner's private interest in his freedom from immigration detention, to which he has been subject for roughly three months, is substantial for the purpose of Mathews.

As to the second Mathews factor, there is a high risk of erroneous deprivation of Petitioner's liberty where the government contends that Petitioner is subject to mandatory detention, with no procedural protections, based on a criminal charge that has been dismissed and for which Petitioner is presumed innocent. See Black, 103 F.4th at 152 ("[T]he almost nonexistent procedural protections in place for [8 U.S.C § 1226(c)] detainees markedly increased the risk of an erroneous deprivation of Petitioners' private liberty interests."); Alcantara Guerrero, 2026 WL 931503, at *5 (citing to Black and Demore v. Kim, 538 U.S. 510, 529 (2003)); see also Coffin v. United States, 156 U.S. 432 (1895) (recognizing presumption of innocence in criminal prosecutions).

The government has also not asserted any connection between Petitioner's now-dismissed charge or underlying conduct and any danger to the community or risk of flight. See Zadvydas, 533 U.S. at 691–92 ("[O]nce the flight risk justification evaporates, the only special circumstance present is the alien's removable status itself, which bears no relation to a detainee's

9

dangerousness."); Doe, 800 F. Supp. 3d at 216–17. An individualized bond hearing, at which an Immigration Judge can assess Petitioner's dangerousness and risk of flight, is thus an "obvious" procedural safeguard that, "[i]n the absence of any meaningful procedural safeguards [for detention under 8 U.S.C. § 1226(c)] . . . would add value" under the second Mathews factor. Black, 103 F.4th at 153.

The third Mathews factor "ultimately entails an assessment of the public interest." Hernandez-Lara, 10 F.4th at 32 (quotation omitted). In considering the government's legitimate interest in matters concerning immigration detention, the court "must 'weigh heavily' the fact that 'control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature.'" Id. (quotation omitted). Specific to the circumstances of this case, the government's interests in "ensuring the noncitizen's appearance at proceedings" and "protecting the community from noncitizens who have been involved in crimes that Congress has determined differentiate them from others" are "legitimate and their importance well-established." Black, 103 F.4th at 153 (citing Demore, 538 U.S. at 518–21, 527–28).

But where Petitioner no longer stands charged with any crime, the government's interest cannot persist indefinitely in the absence of a particularized assessment of the need to detain Petitioner. Where no such assessment has taken place, and where the dismissal of Petitioner's charges necessarily means that no similar assessment has taken place in a criminal proceeding, the court cannot merely assume that Petitioner is dangerous or poses a flight risk— determinations that, again, are readily made by Immigration Judges at bond hearings. Accordingly, where the government has made no attempt to explain why its "interest in securing appearance at removal proceedings and for deportation holds sway where a noncitizen is not a flight risk" or poses a danger to the community, Hernandez-Lara, 10 F.4th at 32, the

government's interest would appear to be attenuated in these circumstances. See Alcantara Guerrero, 2026 WL 931503, at *5.

The "public interest" is also not limited to the government's interest in detaining Petitioner. As the First Circuit has explained, "limiting the use of detention to only those noncitizens who are dangerous or a flight risk may save the government, and therefore the public, from expending substantial resources on needless detention." Hernandez-Lara, 10 F.4th at 33 (citing Velasco Lopez v. Decker, 978 F.3d 842, 854 n.11 (2d Cir. 2020)); see Rosales-Mireles v. United States, 585 U.S. 129, 139 (2018) (noting that "any amount of actual jail time . . . has exceptionally severe consequences for the incarcerated individual and for society which bears the direct and indirect costs of incarceration" (quotations omitted)). Practical considerations are also at play, insofar as "'unnecessary detention imposes substantial societal costs' such as reduced economic contributions and tax payments by detained immigrants." Doe, 800 F. Supp. 3d at 217 (quoting Hernandez-Lara, 10 F.4th at 33). The public is not served by the potentially  indefinite detention of an individual against whom no criminal charges are pending and for whom the government has made no assessment of his risk to the community or likelihood of evading removal.

Taken together, the Mathews factors weigh in favor of Petitioner and, by extension, access to procedural safeguards regarding his continued detention. In so finding, the court joins several other district courts from across the country that have reached the same conclusion. See, e.g., Quintana Cartaya v. Bernacke, 26-cv-00438-GMN-MDC, 2026 WL 1229965, at *5–8 (D. Nev. May 5, 2026); Alcantara Guerrero, 2026 WL 931503, at *5–6; C.R.R. v. Bondi, __ F. Supp. 3d ___, 26-cv-01282 (MJD/DJF), 2026 WL 752462, at *1–3 (D. Minn. Mar. 17, 2026); Vega v. Arnott, 26-cv-3097-MDH, 2026 WL 482906, at *4–6 (W.D. Mo. Feb. 20, 2026); Hairo v.

11

Crawford, 25-cv-00704, 2026 WL 286176, at *2–3 (E.D. Va. Feb. 3, 2026); E.C. v. Noem, 25-cv-01789-RFB-BNW, 2025 WL 2916264, at *9–12 (D. Nev. Oct. 14, 2025); see also Michelin v. Warden Moshannon Valley Corr. Ctr., 169 F.4th 418, 434–35 (3d Cir. 2026) ("The Government advances. . . . that the Supreme Court might one day endorse the Government's position that indefinite detention without a bond hearing under § 1226(c) is constitutional, full stop. Perhaps it will. In the meantime, we have held that indefinite detention without a bond hearing can violate the Due Process Clause. . . .").

C. *Scope of Relief*

In his Petition [Doc. No. 1], Petitioner seeks immediate release from detention. Id. at 13 ¶ 5. The government opposes this request and instead asks the court to limit relief to a bond hearing before an Immigration Judge. See Opp'n 4–5 [Doc. No. 8]. Where no determination as to Petitioner's dangerousness or flight risk has yet been made by an Immigration Judge, the court will order the government to provide a bond hearing to Petitioner in the next seven days, as described in greater detail infra.[4]

**IV. Conclusion and Order**

For the foregoing reasons, the Petition [Doc. No. 1] is GRANTED as follows:

No later than June 15, 2026, Respondents must provide Petitioner a constitutionally-adequate bond hearing consistent with 8 U.S.C. § 1226(a) and Hernandez-Lara v. Lyons, 10 F.4th 19 (1st Cir. 2021). If the immigration judge declines to conduct a bond hearing based on Matter of Yajure Hurtado, 29 I&N Dec. 216 (B.I.A. 2025), Respondents shall so advise the court

---

[4] Insofar as Petitioner requests that the court enjoin the government from "re-detain[ing] Petitioner without a pre-deprivation hearing at which the government bears the burden to demonstrate . . . that the petitioner is a danger to the community or a flight risk and at which the immigration judge must consider non-bond alternatives to detention or, if setting bond, the Petitioner's ability to pay[,]" Pet. 13 ¶ 5 [Doc. No. 1], such a request is not ripe where the court will order a bond hearing, rather than immediate release.

by that date so that this court may conduct the bond hearing. Any decision by the immigration judge to retain Petitioner in custody following a bond hearing shall set forth the reasons for the continued detention, specifically identifying the basis for any assertion that Petitioner's release would pose a danger or flight risk.

Respondents shall submit a status report on this matter no later than June 22, 2026.

IT IS SO ORDERED.

June 10, 2026                                          /s/ Indira Talwani
                                                       United States District Judge

13